UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE JOHNS,

    Plaintiff,

v.                                                            Case No. 1:07-cv-95
                                                               HON. JANET T. NEFF

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Ronnie Johns filed this prisoner 42 U.S.C. § 1983 action *pro se* against the Michigan Department of Corrections (MDOC), MDOC Director Patricia Caruso, Bellamy Creek Correctional Facility (IBC) Warden Kenneth McKee, IBC Assistant Deputy Warden David M. Johnson, Corrections Officer Brian Schaefer, Corrections Officer Brian Hetrick and Resident Unit Officer Terry Bashore.  The Defendants are being sued in their individual and official capacities for allegedly denying Plaintiff access to courts, denying Plaintiff due process of law, retaliating against Plaintiff in violation of the First Amendment, and denying Plaintiff access to UCC materials in violation of the Constitution.  Finally, Plaintiff challenges the constitutionality of MDOC Policy Directive 05.03.118, Paragraph HH, No. 23, as being "vague," "arbitrary," and "overbroad."

**Statement of Facts**

        The policy around which this case centers was originally issued by Defendant Caruso on March 30, 2004 in a Director's Office Memorandum (DOM 2004).  This memorandum stated, in relevant part:

> Effective immediately, prisoners are no longer authorized to have any books, pamphlets, or forms or other material regarding actions that can be taken under the UCC; these materials shall be considered contraband since they can be used to facilitate criminal activity and pose a risk to the custody and security of the facility.

This memorandum was updated and changed several times before taking its current form in Policy Directive 05.03.118, Paragraph HH, No. 23, dated January 1, 2006, stating that prisoners are prohibited from receiving:

> Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

Plaintiff contends that on April 11, 2004, Defendant Schaefer confiscated from Plaintiff's cell a box containing UCC materials, trial transcripts, a lawyer's address book, a Writ of Mandamus, a notebook with court cases, a criminal appeals brief, a prosecutor's brief, two court orders, miscellaneous papers, and a "book with a home-made cover." Plaintiff alleges that Defendant Schaefer failed to itemize or describe the materials he confiscated as per MDOC policy and then issued Plaintiff a "Minor Misconduct Report" and a "Contraband Removal Record." The Contraband Removal Record shows that the items removed from the cell were, "1 Box of Numerous papers about UCC" and "1 Book with a home made cover." Plaintiff was found guilty of the minor misconduct. Plaintiff appealed the decision and sought the return or reimbursement of the alleged non-UCC items through the use of the MDOC grievance process. In June 2004, Plaintiff was informed the confiscated materials had been lost, that he would not be reimbursed for contraband materials, and that he could seek reimbursement for lost legal property through the State Administrative Board Process.

Plaintiff pursued a State Administrative Board claim for reimbursement of the allegedly lost trial transcripts in the amount of $884.00. In response to the claim, Defendant Johnson sent a memo to Defendant McKee on October 20, 2004, stating that the location of the confiscated box had been determined and that Defendant Johnson had reviewed the contents of the box and book. Defendant Johnson's memo states:

> All materials within the box and the book are UCC related and are not allowed per DOM 2004-8. There were no transcripts or other court documents contained within the box of materials; had there been, the documents would have immediately returned to Prisoner Johns. Prisoner Johns is not entitled to compensation for the loss of court transcripts as there is no evidence to support that they were present in the box of the UCC related materials.

Based on this memo, the Office of Audit, Internal Affairs and Litigation recommended to the State Administrative Board on January 5, 2005, that Plaintiff's claim for $884.00 be denied and Plaintiff instead be reimbursed $2.50 for the UCC materials that were copied from a law book in the prison law library. The State Administrative Board adopted this recommendation. Plaintiff's trial transcripts were later found in the office of a non-defendant and were returned to Plaintiff. In February 2005, Plaintiff was notified that all UCC materials were destroyed by December 2004.

Plaintiff claims that Defendants Schaefer, Johnson, McKee and Caruso denied Plaintiff due process of law, denied Plaintiff access to courts because the UCC and non-UCC materials were being used to appeal his criminal conviction, and retaliated against Plaintiff by destroying his UCC documents in violation of the First Amendment. Plaintiff is seeking compensatory damages of $80,000 for deprivation of property and mental anguish, punitive damages of $80,000, as well as declaratory and injunctive relief.

Plaintiff next contends that on March 26, 2005, while in the prison law library preparing a civil rights complaint to challenge the constitutionality of the MDOC policy on UCC

prohibition, Defendant Hetrick allegedly confiscated said complaint, along with UCC documents that were attached to it. Plaintiff was issued a Contraband Removal Record and a Notice of Intent to Conduct an Administrative Hearing (NOI). Plaintiff claims that at the time of the confiscation, Defendant Hetrick failed to itemize the documents that were confiscated. The Contraband Removal Record and the NOI state that 40 sheets of UCC related documents were confiscated from Plaintiff. Plaintiff contends he was given an inadequate and improper Administrative Hearing on April 7, 2005, by Case Manager Avery who, Plaintiff alleges, was not trained to deal with this legal property. The Hearing Report stated Plaintiff was in violation of policy and that the UCC materials would be disposed of per policy. Plaintiff claims to have filed a grievance against Defendant Hetrick on April 7. However, the grievance form dated April 7 was an appeal to the Administrative Hearing and states that Plaintiff's complaint should not have been confiscated along with the UCC documents. The grievance was appealed through Step III and it was concluded that prison officials followed policy.

On April 16, 2005, Plaintiff sent a letter to Defendant McKee requesting that he be allowed to send the confiscated documents home at his own expense. The response dated May 2, 2005 states, "This is the second occurrence of documents of this type being confiscated from your possession as a result of your failure to adhere to policy/procedure. This being the case, request is denied." Prison officials addressed Plaintiff's concerns regarding this incident on two other occasions and concluded that there was no violation of policy on the part of prison officials.

Plaintiff is alleging that Defendants Hetrick, McKee and Caruso deprived him of due process, denied him access to the courts by confiscating his complaint, and retaliated against him for exercising his right to file a suit challenging MDOC policies. Plaintiff seeks $95,000 in compensatory damages and $110,000 in punitive damages.

Next, Plaintiff contends that on July 19, 2005, Defendant Bashore spoke to Plaintiff regarding his attempts to challenge the MDOC UCC prohibition policy and allegedly stated that she was going to shake down Plaintiff's cell. Plaintiff avers that the next day, Defendant Bashore did search his cell and confiscated as "UCC related" a Federal RICO complaint, a Pro Se litigation manual, and a prisoners' constitutional rights manual. Defendant Bashore responds, and the Contraband Removal Form shows, that the documents removed from Plaintiff's cell were a packet of papers approximately 1-1/2 inches thick pertaining to the UCC and nine copies of birth certificates. On August 3, 2005, Plaintiff was given Notice of an Administrative Hearing on the July 19 contraband confiscation. A hearing was conducted that same day by the same officer who gave the notice. Plaintiff alleges that it is a violation of policy to give notice and conduct a hearing in the same day and that it also a violation of policy for the same officer to give notice and conduct a hearing. Plaintiff contends that the officer who held the hearing, non-defendant RUM Wright, was not trained to deal with legal property. Plaintiff admits that at the hearing, RUM Wright decided the Pro Se Litigation Manual and Prisoners' Constitutional Rights Manual were not UCC related and returned them to Plaintiff. However, Plaintiff alleges that RUM Wright did not return Plaintiff's Federal Rico complaint.

On August 10, 2005, Plaintiff claims he filed a grievance against Defendant Bashore requesting that his RICO complaint be returned to him. However, the grievance form of that date shows the grievance to be an appeal of the administrative hearing. The grievance was appealed to Step III and it was determined there was no evidence to support Plaintiff's claim that federal RICO documents were contained in the confiscated documents and there was no prison staff misconduct.

On January 3, 2006, Plaintiff claims Defendant Johnson warned him to "refrain from pursuing litigation involving the UCC or he would have Plaintiff transferred to another prison 'up

north.'"  Plaintiff was transferred to Kinross Correctional Facility on February 1, 2006.  On February 3, 2006, Plaintiff claims Defendant McKee denied his request to send home the alleged UCC documents.

Plaintiff claims that his RICO complaint was destroyed in retaliation for petitioning the government for a redress of grievances.  Plaintiff also claims that Defendants Bashore, McKee and Caruso deprived Plaintiff of his due process rights and denied him access to courts.  Plaintiff seeks $60,000 in compensatory damages and $60,000 in punitive damages, along with injunctive and declaratory relief.

Finally, Plaintiff contends that MDOC Policy 05.03.118, Paragraph HH, No. 23, is unconstitutional as it is vague, arbitrary and overbroad.  He claims the policy allows prison officials to confiscate and destroy UCC documents that pertain to a prisoner's criminal case, civil case, and personal property.  Plaintiff claims that the policy is invalid because it did not derive its authority from any statute, administrative rule or court order.  Plaintiff alleges the policy was designed to deprive prisoners of legal materials in violation of the First Amendment.  Plaintiff claims he gave his comments and concerns to the Housing Unit Representative regarding the UCC policy and asked that the issue be raised at the Warden's Forum.  Finally, Plaintiff states he has "never intentionally or knowingly filed any fraudulent UCC Financing Statement against another individual to harass or threaten that individual."  Plaintiff requests an injunction on the enforcement of PD 05.03.118, Paragraph HH, No. 23, and an injunction preventing the confiscation of UCC materials under PD 05.03.118 until this case is resolved. Plaintiff also seeks compensatory damages in the amount of $150,000 and punitive damages in the amount of $175,000.

**Defendants' Motion for Summary Judgment**

Presently before the Court is Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a

State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993). An inmate must demonstrate actual injury to pending or contemplated litigation. *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001)(citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

Plaintiff has failed to demonstrate any actual injury to pending or contemplated litigation. Plaintiff claims that his access to courts were restricted by the destruction of UCC and

non-UCC materials that were to be applied to an appeal of his criminal case. However, Plaintiff's court transcripts were returned to him and there is no evidence that any other non-UCC material was taken from Plaintiff. An administrative hearing was held, the grievance process followed, and it was determined that the UCC documents were properly confiscated as per MDOC policy. Additionally, Plaintiff has not made any specific claim as to how he has been prejudiced in his criminal case appeal. Similarly, Plaintiff has failed to show any injury to the pursuit of a legal claim arising out of the events raised in his complaint. Finally, at the time of all three incidents alleged in Plaintiff's complaint, Defendants confiscated only materials that were considered a threat to the security of the institution. Plaintiff has failed to state a genuine issue of material fact as to his denial of access to courts claim. Therefore, it is the opinion of the undersigned that Plaintiff's access to courts claim should be denied.

Plaintiff's claims of denial of due process of law similarly fail. Plaintiff's complaint, as well as the attached documents, establish that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not

in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original).

Plaintiff fails to show how he was deprived of due process of law. In fact, in each of the claims presented, Plaintiff himself provides the Administrative Hearing and Grievance Process Reports to defeat his own claims. Every time property was confiscated from Plaintiff, he was given an Administrative Hearing at which he was found guilty of possessing contraband. Plaintiff appealed the decisions through all three steps of the MDOC grievance process and the original decisions were upheld. It is not the responsibility of this court to decide whether any of these decisions were correct; this court's only responsibility is to ensure that the Plaintiff was given due process of law. For this reason, the undersigned believes that Plaintiff has failed to raise a genuine issue of material fact for trial and recommends that the due process claims be dismissed.

Next, Plaintiff claims Defendants destroyed various legal materials belonging to Plaintiff in retaliation for petitioning the government for redress of grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete, relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that his legal documents were destroyed in retaliation for filing this case. At most, it can only be shown that Plaintiff's UCC documents were destroyed. However, at the time, Plaintiff was not engaging in a permitted activity in possessing those UCC documents and the Defendants were simply acting within the bounds of policy directives by confiscating these documents. Plaintiff does not allege any relevant particulars to support the claim of retaliation. Accordingly, his speculative allegations fail to state a claim.

Finally, Plaintiff contends the MDOC policy prohibiting the possession of UCC materials by prisoners is unconstitutionally vague and overbroad. As such, Plaintiff is seeking damages and an injunction on MDOC Policy Directive 05.03.118, Paragraph HH, No. 23, and an injunction preventing the confiscation of UCC materials under PD 05.03.118 until this case is resolved.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Plaintiff's right to possess UCC materials had not been clearly established as a constitutional right. At the time Plaintiff's UCC materials were confiscated, there was no indication that he had any statutory or constitutional right to possess UCC materials. Thus, Defendants had no cause to believe that their conduct was in violation of Plaintiff's federal rights. Therefore,

Defendants' actions are protected from civil liability under the shield of qualified immunity and, as such, Plaintiff's claim for damages should be dismissed.

Additionally, Plaintiff's prayer for injunctive relief against MDOC Policy Directive 05.03.118, Paragraph HH, No. 23, is moot. On September 28, 2006, the United States District Court for the Eastern District of Michigan issued an injunction on the use of MDOC Policy Directive 05.03.118, Paragraph HH, No. 23, in *Jones v. Michigan Department of Corrections, et al.*, 2006 WL 2805643 (E.D.Mich.). Therefore, it is not necessary for the undersigned to discuss this issue further.

Plaintiff's request for an injunction preventing the confiscation of UCC mail under PD 05.03.118 until this case is resolved should be denied. The standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner v. Safley*, 482 U.S. 78 (1987); *Washington v. Harper*, 494 U.S. 210, 224 (1990). In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to ensure that "prisoner administrators. . .and not the courts. . .make the difficult judgments concerning institutional operations." *Turner*, 482 U.S. at 89, quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

Although there is no question that the First Amendment applies to a prisoner's receipt of incoming mail, the right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The Supreme Court has held that prison regulations (similar to those in Michigan) allowing a warden to reject any publication for good reason pursuant to specific criteria did not violate the First Amendment because the regulations were reasonably related to legitimate penological interests. *Thornburgh v. Abbot*, 490 U.S. 401, 413 (1989).

The MDOC and its officials have a genuine penological interest in preventing prisoners from possessing documents which are a threat to the security, good order, or discipline of the facility or promote criminal activity. Furthermore, and perhaps more to the point, Plaintiff fails to allege any reason why the use of these policies should be enjoined. Therefore, in the opinion of the undersigned, Plaintiff's request for an injunction on PD 05.03.118 should be denied.

Lastly, Defendants maintain that this court lacks jurisdiction over this case under the Eleventh Amendment. The Eleventh Amendment bars litigants from suing a state in federal court. When suit is brought against a state official in his official capacity, the case is one against the state and is barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21 (1991). Such a suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Id. (quoting Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, n.55 (1978)). *See also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). As a result, the suit is no different from one naming the state itself. *Hafer*, 112 S. Ct. at 362, (*quoting Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)). Therefore, the present case must be dismissed as to all Defendants in their official capacities.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' motion for summary judgment (Docket #22) be granted and that this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an

appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

**Plaintiff's Motion for Preliminary Injunction**

Plaintiff has filed a Motion for a Preliminary Injunction to prevent Defendants, their officials, agents, representatives, employees and assigns from confiscating Plaintiff's UCC materials under MDOC Policy Directive PD 05.03.118, Paragraph HH, No. 23. As mentioned above, prison officials have already been enjoined from using PD 05.03.118, Paragraph HH, No. 23, and therefore the issue as to that policy directive is moot.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2. Whether the movant has shown irreparable injury.
>
> 3. Whether the preliminary injunction could harm third parties.
>
> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison

setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights. At this time, there is no federal right allowing a prisoner to possess UCC materials. Additionally, prison officials have a penological interest in preventing inmates from possessing materials that may promote criminal activity. Plaintiff has failed to allege any material facts to support his claim that his federal rights have been violated. Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here. Because plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, the

undersigned recommends that plaintiff's motion for a preliminary injunction (Docket # 19) order be denied

### Plaintiff's Motions to Amend/Supplement

Plaintiff has filed a motion to amend complaint and a motion for leave to supplement complaint. Since a party may amend his complaint once as a matter of course before a responsive pleading is filed, Plaintiff's first amended complaint (Docket #30) must be accepted. Fed. R. Civ. P. (15)(a)(1).

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). Plaintiff's motion to supplement complaint cannot add parties or claims that could revive his cause of action. Therefore, in the opinion of the undersigned, Plaintiff's motion for leave to supplement his complaint (Docket #37) should be denied as futile.

### Conclusion

In summary, it is recommended that Defendants' motion for summary judgment (Docket #22) be granted and this case be dismissed in its entirety. It is further recommended that Plaintiff's motion for preliminary injunction (Docket #19) be denied, plaintiff's motion to amend complaint (Docket #30) be granted, and plaintiff's motion for leave to supplement complaint (Docket #37) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 21, 2008